Denio, J. (Dissenting.)
The alleged error of the Surrogate mainly relied on by the counsel for the contestants is, that the widow of the deceased was improperly excluded when offered as a witness on their behalf. This ruling is sought to be sustained by the counsel of the present appellant, not only on the ground of interest, which the Supreme Court assumed to form the basis of the Surrogate’s determination, but because, as alleged, the witness was incompetent on account of being a party to the proceeding. It is impossible to say on what ground the Surrogate held the widow incompetent. Ho objection on the part of the proponent, to her being sworn, is stated; but the Surrogate, so far as appears, excluded the witness of his own motion. The objection of interest is not alluded to, nor any opportunity given to obviate it by a release or otherwise, if it existed. The objection that the witness was incompetent as a party to the proceeding, if a good one, was patent, and did not require to be pointed out. The officer had the record before him, and of course knew the precise relation which the witness sustained to the litigation; and if the law did not permit a person thus situated to be examined, it was quite correct for the judge to exclude him, unless the opposite party should consent to her being received. The first inquiry, then, is, whether she was incompetent on account of being a party to the proceedings, irrespective of any "question of interest. At law the rule was *24 well established that a-party to a-su.it could not be received as a-witness, whether be was interested or not. (Pack v. The Mayor, &c., of New York, 3 Comst., 489; Cow. & Hill’s Notes, 134,137, 1548.) In Chancery the rule seems to have been the same, subject, however, to the exception that if a defendant desire to examine a co-fiefendant he-might have an order allowing him to do so on ¡showing by affidavit that the party sought to be made a witness was not interested-in the matter to which he was to be examined. Where stich Order was obtained the party might be examined, subject, however, to all objections to Ms -competency other than that he was a party to the smt. (Chancery Rules of 1844, Rule 73.) If being a party Was not, prima facie, a disqualification, it would not be necessary to obtain an order; but the question upon receiving Ms testimony would ¡be the same wMch arises when ainy person -is proposed to be examined. A complainant Cannot be ¡examined 'on behalf ¡of a eo-complainant. (Eckford v. De Kay, 6 Paige, 565.) Proving ia will before the Surrogate, under the-statute, is mot: strictly a suit in court, though it is -a . judicial ¡inquiry of the ¡same 'general Character. The executor, -or other -party ¡propounding ¡the alleged will, is required to procure and-serve a citation, in the nature of process, against all ¡persons who would be -entitled to a share of the -succession in -case -of intestacy. -The persons cited may or may not, ón the whole, be ¡interested to 'oppose the probate, and they -may appear, or abstain -from appearing, according¡as-their interests-may-seem to-them to -require; or some of ¡those -interested -to defeat the alleged will may stay away, relying on ¡a sufficient opposition being made by other interested parties who actually-appeanas .contestants,-and whose opposition would necessarily inure to their benefit. The judgment operates in rem and in personam. In -the former - aspect, when the will-is established, the -judgment declares the assets to bq a -fund to be distributed according to the directions of the ¡will,:1 and irrevocably attaches that character to them. As -a'.personal judgment, it divests all the parties proceeded against ,of the rights wMch they would have had under the statute of ¡distributions -in the case of intestacy, and also all such as they *25 would have had under any former will which is revoked or superseded by the one attempted to be proved. This view of the effect of the proceeding shows that, upon principle, there is the same reason for excluding the testimony of the parties which would exist in a regular proceeding at law or in equity. No substantial distinction 'exists between the different proceedings in this particular. Still, as this rule is in all cases an arbitrary one, and is not founded on any very strong reasons, I should hesitate to extend it to a case to which it had not hitherto been applied. But I find that it is considered to prevail in the ecclesiastical courts in England, which courts, as is well known, have the jurisdiction of admitting wills of personal property to probate, exercising, in that respect, substantially the same jurisdiction which the statute of this State has vested in the Surrogate. A case referred to from the reports of these courts appears to me to recognize the rule as I have stated it to prevail in the late Court of Chancery. In Arnold v. Earl & Newbee (2 Lee, 380), there was a citation to prove a will, and the .question was, whether Newbee, one of the parties proceeded against, as a next of kin of the deceased, could be sworn on behalf of the executor, who .propounded the instrument. Newbee appeared, declared he would not oppose the will, and prayed to be dismissed, so that he could be a witness for the executor. The motion was opposed on behalf of another party, who appeared as next of kin. There was no suggestion that he was a competent witness while he remained a party to the proceeding ; but the judge said that, having declared he would not oppose the will, he had judicially bound himself, and had thereby fully answered the purpose for which he was cited. He was, therefore, dismissed as a party, and was then sworn as a witness. The motion and the order would be absurd, if the general rule were not that a party to such a proceeding was incompetent to be sworn as a witness. In Brush v. Holland, Mr. Bradford, late Surrogate of New York, had occasion to examine this question incidentally, and concluded that none of the parties to a probate proceeding were competent witnesses. (3 Bradf., 240.)
*26 In the present case, the widow of the alleged testator.was a necessary party. She had not declared she would not oppose the probate, though she did not appear and offer any actual opposition; and no order had been obtained, dismissing her. from the proceeding. The opposition which was actually offered by the other parties, however, inured- as fully to her benefit as though she had formally appeared. I am, therefore, inclined to the opinion that, as the case then stood, she was incompetent to give testimony for another party, cited as a-next of kin to attend the probate.
But I think, also, that she was an interested party. As the widow of the deceased, she was, prima facie, entitled to a share of his personal estate. But against this claim there were two wills, in each of which she was cut off, so far as regards personalty, with a nominal legacy. If the second will, which was sought to be proved, was -valid, her claim was barred. If that will was invalid, perhaps the former one, if itself otherwise a valid will, would stand unrevoked, and she would still be barred. But the question as to the validity of thé first will was not on trial. If, in the actual proceeding, the judgment had been against the will, the first one would not be judicially established. It would require to be propounded for probate, and then an opportunity would be afforded to attack it on the ground of want of testaméntary capacity. If the intention of the widow was to contend for intestacy, both wills must be opposed, as they should successively be presented for probate. She had an interest to defeat the will now in question, for that would remove one obstacle in her way. If established, it would furnish a conclusive bar to her claim; but if defeated, her claim would be perfect, unless probate of the other will could be obtained. Now, a considerable part of'the evidence which was given upon the question of capacity covered the period during which both the wills were executed. Charles Talbot, it is true, would not probably have opposed the first will, because in that he shared the estate equally with 'his brother; but the widow and the other next of kin, besides her sons, had a direct interest to oppóse that wjll when propounded *27 for probate. When it came out incidentally that a former will had been executed, which was destroyed after the second one was signed, it is not to be conclusively assumed that it was a valid and perfect will when executed. It was indifferent to the question then immediately under consideration, whether that was its character or not; for, whether it was valid or not, it was revoked by the execution of the other, if the testator had then sufficient capacity to make a will.
Upon the whole, I think it clear that the widow was a formal party to the proceeding, and that she had .a pecuniary interest to defeat the probate of the will. If the objection upon which the ruling, excluding her, was made, was based upon her being a party to the proceeding (as I think it should be considered), it was well taken, though the law should be that a mere formal party, without interest, would be competent. She was an interested party to the record. She was not competent under the act of 1847 (ch. 462),- which authorizes the calling of an adverse party; for she was in the same interest with, and in no sense adverse to, the contestants who called her. The Code had no application to the case; for such proceedings as these were expressly excepted from its operation. (§ 471.) But if the Code governed the case, the witness wpuld not have been competent; for, when the trial took place, interested parties were incompetent. (§ 399.)
I am, therefore, of opinion that the ruling of the Surrogate was correct, and the judgment of the Supreme Court should be reversed.
Masoh, J:, also delivered an opinion for reversal. Com-stock, Oh. J., concurred in the preceding opinion so far as it relates to the interest of the widow, but did not regard the objection-that she was a party as requiring any formal order to obviate it.
Order affirmed.